UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

ROBERT WINBURN #222196,

        Plaintiff,                                    Case No. 2:06-cv-130

v.                                                                  Honorable Gordon J. Quist

J. HADFIELD, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. On May 7, 2007, this Court ordered service of Plaintiff's complaint on Defendant Hadfield with regard to Plaintiff's Eighth Amendment claim for nominal and punitive damages. On June 20, 2007, Defendants filed a motion for summary judgment (docket #17) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response (docket #28) on or about August 2, 2007. Upon review, I recommend that Defendants' motion for summary judgment be denied based on Plaintiff's failure to exhaust his available administrative remedies.

## Applicable Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir.), *cert. denied*, 126 S. Ct. 650 (2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th

Cir.), *cert. denied*, 126 S. Ct. 338 (2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

   A prisoner's failure to exhaust his administrative remedies is an affirmative defense for which Defendants have the burden to plead and prove. *Jones v. Bock*, 127 S. Ct. 910, 919-21 (2007). A moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief of the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no

reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**Facts**

Plaintiff Robert Winburn #222196, an inmate at the Standish Maximum Correctional Facility, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Corrections Officer J. Hadfield and Correctional Employee Unknown Party named as John/Jane Doe. Plaintiff alleges that he is a protective custody prisoner who is confined to a segregated housing unit within a general population compound. Plaintiff is a documented sufferer of kidney stones and must drink large amounts of water in order to reduce his chances of developing further stones. Plaintiff was scheduled to be seen by health care on November 16, 2005, at 7:00 a.m. for a foot infection. Shortly after 12:30 a.m., Plaintiff began to suffer from severe pain, so Plaintiff took twelve ibuprofen and consumed 120 ounces of water between 12:30 and 4:30 a.m. Plaintiff finally fell asleep. Plaintiff woke at 6:55 a.m. and did not have time to use the bathroom before his appointment. Plaintiff arrived at health care at 7:05 a.m. and sat in the waiting room for some time before he was seen by the nurse. The nurse refused to address Plaintiff's concerns about his kidney stones because his appointment had been scheduled to address Plaintiff's foot problems.

While Plaintiff was in the waiting room for over one hour he attempted to use the bathroom. However, a new sign was posted on the door stating, "No A3 Prisoners Allowed." Plaintiff asked Defendant Hadfield if he could use the bathroom, explaining that he was in pain from kidney stones and had consumed a large amount of water during the night. Defendant Hadfield

became very belligerent, got red in the face and appeared to be angry. Defendant Hadfield stated that A3 prisoners were "a bunch of rat bitches" and had "nothing coming," and that if Plaintiff did not like it, he could "piss in his pants" and "write a grievance." Plaintiff responded that such a practice was discriminatory because using the bathroom was a basic human need. Defendant Hadfield again stated that protection prisoners had nothing coming. During this exchange, general population prisoners were allowed to come and go to the bathroom. Once all of the A3 prisoners were seen by health care personnel, they were escorted back to their housing unit. On the trip back to his unit, Plaintiff urinated in his pants because he was unable to control his bladder any longer.

When Plaintiff entered his cell, his cell mate noticed a wet spot on his pants and joked about it. Plaintiff then removed his pants and underwear and put them in a plastic bag to be washed later. Plaintiff states that his pants contained a mixture of blood and urine. Plaintiff then went to the restroom to wash up and noticed that a small piece of kidney stone was lodged on the inside of his urinary tract. Plaintiff removed the stone and placed it in a sterile plastic bag. After Plaintiff passed the kidney stone, his urine was tinged with blood for several hours.

Plaintiff alleges that on February 14, 2006, he spoke with Corrections Officer Hudak while being escorted to the gym. Corrections Officer Hudak recalled Plaintiff urinating in his pants and stated that he thought it was unfair to deny prisoners use of the restroom. Corrections Officer Hudak further stated that the sign had been placed on the restroom door because general population prisoners were discovered to have been planting contraband such as tobacco for administrative segregation prisoners, and that if anyone was to be precluded from using the restroom, it should have been the general population prisoners. Following Plaintiff's grievance, an investigation was conducted into the situation, which prompted the Warden to issue specific rules for health services. Under the new rules, any prisoner may use the restroom upon staff permission. Plaintiff claims that

Defendants violated his rights to equal protection and to be free from cruel and unusual punishment. Plaintiff seeks damages and equitable relief.

The undersigned issued a report and recommendation for dismissal of this action on August 8, 2006 (docket #3). Plaintiff filed objections and the court issued an order rejecting the report and recommendation as it pertained to Plaintiff's Eighth Amendment claim against Defendant Hadfield for nominal and punitive damages (docket #8).

## Discussion

Defendant Hadfield claims that he is entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies. Pursuant to 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 127 S. Ct. 910, 922-23 (2007); *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 127 S. Ct. at 922-23.

MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003)[1], sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control *Id.* at ¶ R. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ R, X. The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ T (emphasis in original). The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ Y.

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within five business days of the response, or if no response was received, within five days after the response was due. *Id.* at ¶¶ R, DD. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ FF. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ R, HH. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ HH. The Prisoner Affairs Section is the respondent for Step III grievances

---

[1]The MDOC recently amended Policy Directive 03.02.130 on July 9, 2007. However, the 2003 version of the policy directive was in effect at all times applicable to this lawsuit.

on behalf of the MDOC director. *Id.* at ¶ II. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ U. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall be completed within 90 calendar days unless an extension has been approved . . . ." *Id.*

In addition, the grievance policy provides that, where the grievance alleges staff brutality or corruption, the grievance may be submitted directly to Step III. *Id.* at ¶S. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.*

Defendant Hadfield claims that Plaintiff did not exhaust his administrative remedies because his grievance on the Eighth Amendment claim was untimely and offers a copy of the grievance and subsequent appeals in support of this assertion. However, a review of the grievance at issue reveals that Plaintiff's grievance and the subsequent appeals were addressed on the merits. When an administrative agency addresses an inmate's grievance and appeals on the merits, then the agency has found that the inmate satisfied the required critical procedural rules. *See Woodford,* 126 S. Ct. at 2385 (if the agency addresses a grievance on the merits, then the inmate has "us[ed] all steps that the agency holds out, and do[ne] so properly."). Therefore, Defendant Hadfield's contention regarding the issue of timeliness is irrelevant.

Defendant Hadfield also asserts that Plaintiff failed to state all the material facts in his grievance, so that it did not properly exhaust his Eighth and Fourteenth Amendment claims. MDOC Policy Directive 03.02.130 (effective Dec. 19, 2003) provides the following directions for completing grievance forms: "[t]he issues shall be stated briefly. Information provided shall be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included."

*Id.* at ¶ T (emphasis in original). Defendant Hadfield asserts that in Plaintiff's complaint he made a number of allegations which were not included in the body of the step I grievance. These included Plaintiff's claim that he had informed Defendant Hadfield that he had consumed a large amount of water prior to the incident and that he was in pain from kidney stones. In addition, Defendant Hadfield claims that Plaintiff failed to allege in his grievance that Defendant Hadfield called A-3 prisoners a bunch of rat bitches and that if Plaintiff didn't like it he could piss in his pants and write a grievance. A review of the step I grievance reveals that Plaintiff asserted the following:

> On or about 11/16/05 I had to use the rest-room real bad while at medical, but when I went to enter said room, there was a sign posted on the door which read: "No A-3 Prisoners allowed." When I asked Officer Hatfield if I could use the rest-room, he became very belligerent, red in the face, and angry that I requested use of the rest-room. At said time, I indicated that said practice was discriminatory, and unconstitutional as using the rest-room was a basic human need, and segregation like this was abolished when the North defeated the South. Again, Officer Hatfield denied my request to use the rest-room indicating that protection cases had nothing coming even though I told him I was going to urinate in my pants; thereby forcing me to urinate in my pants when I couldn't hold it any longer. Obviously, said actions constitutes discrimination and cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments to the U.S. Const.

(*See* Exhibit 2 to Defendant Hadfield's motion for summary judgment.)

As noted above, the grievance policy requires prisoners to <u>briefly</u> describe the facts, including the parties involved, the date and time of the incident, and a basic description of what occurred. The fact that Plaintiff did not describe every detail of his condition at the time of the incident or every comment made by Defendant Hadfield, does not render his grievance ineffective to exhaust his claims. In addition, as noted by the court in the order adopting in part and rejecting in part the report and recommendation (docket #8), a refusal to allow a prisoner to use the toilet may give rise to an Eighth Amendment claim, without regard to any specific medical problems.

Therefore, contrary to Defendant Hadfield's assertion, the fact that Plaintiff had kidney stones was not a "material fact" and does not require a finding that Plaintiff did not exhaust his administrative remedies.

Defendant Hadfield also claims that Plaintiff has failed to exhaust his claim that Defendant Hadfield invented the rule that A-3 prisoners could not use the bathroom, and that the rule is arbitrary and unauthorized by the institution, because Plaintiff did not raise it until his step II appeal. However, as noted above, Plaintiff need not allege any more than the basic facts of the incident in his grievance. In the opinion of the undersigned, Plaintiff complied with this requirement. Therefore, the undersigned recommends that Defendant Hadfield's request for summary judgment be denied.

**Recommended Disposition**

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (docket #17) be denied.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: February 13, 2008

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).